UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:09CV20-3-MU

| | |
|---|---|
| MARVIN JUNIOR COVINGTON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| RICK JACKSON, Administrator, ) | |
| Lanesboro Correctional Inst., ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Petitioner's Petition for Writ of Habeas Corpus (Doc. No. 1); Respondent's Answer and Motion for Summary Judgment (Doc. Nos. 4 and 5) and Petitioner's response in opposition (Doc. No.11.) For the reasons stated herein, Respondent's Motion for Summary Judgment is granted and Petitioner's Petition for Writ of Habeas Corpus is denied and dismissed.

## I. Procedural History

A review of the record reveals that on April 27, 2006, Petitioner was convicted, after trial by jury, of two counts of first-degree kidnapping, first-degree rape, robbery with a dangerous weapon, and multiple misdemeanors stemming from the abductions. The jury also found Petitioner had obtained the status of a violent habitual felon and he was sentenced to life without parole. On October 2, 2007, the North Carolina Court of Appeals issued an unpublished opinion finding no error. Petitioner dated a pro se motion for appropriate relief ("MAR") June 9, 2008 and filed it in the Superior Court of Mecklenburg County. On August 20, 2008, the Honorable Robert P. Johnston

1

summarily denied the MAR. On September 15, 2008, Petitioner filed a pro se certiorari petition in the North Carolina Court of Appeals. The state filed its response on September 18, 2008. Certiorari was denied on September 19, 2008. On October 3, 2008, Petitioner filed a pro se certiorari petition in the Supreme Court of North Carolina, seeking review of the September 19, 2008 order of the North Carolina Court of Appeals denying certiorari. Certiorari was dismissed on December 11, 2008. Petitioner filed the instant § 2254 Petition in this Court on January 15, 2009 alleging that his: (1) Fourth Amendment rights were violated; (2) Sixth Amendment rights were violated; and (3) Fifth, Sixth and Fourteenth Amendment rights were violated because his speedy trial motion was denied.

## II. Standard of Review

Generally speaking, the standard of review to be applied by the Court to habeas cases is "quite deferential to the rulings of the state court." Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir. 2001). Indeed, as the Burch Court noted:

> [p]ursuant to the standards promulgated in 28 U.S.C. § 2254, a federal court may not grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court proceedings unless the state court's adjudication; (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal laws, as determined by the Supreme Court of the United States" . . . ; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . ."

Id. (Internal citations omitted).

The Supreme Court has explained that a state court adjudication is "contrary" to clearly established federal law, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the

2

Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000), quoted in Burch. An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. Therefore, this Court may not issue the writ even if it concludes in its own independent review, that the relevant state court merely made an incorrect or erroneous application of the correct federal principles. Id.

Finally, the applicable standard of review is to be applied to "all claims 'adjudicated on the merits," that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.2d 445, 455 (4th Cir. 1999).

### III. Analysis

**A.    Fourth Amendment Claim is Barred**

As his first claim for relief, Petitioner contends that he was forced to submit to the search and seizure of his DNA without a court order. Petitioner attached a police search report stating, "Item # 4: One Bucal Swab (DNA)" was collected.

Petitioner was afforded a full and fair opportunity to raise and litigate whatever Fourth Amendment search and seizure claims he wished at trial and on appeal. He and his lawyers chose not to do so – likely because he did not deny he had sex with the victim, his former girlfriend, arguing that the sex was consensual. However, he was not denied an opportunity to do so. Therefore, his Fourth Amendment claim is barred from federal habeas review. Stone v. Powell, 428 U.S. 465 (1976) (federal habeas review not available for Fourth Amendment claims where petitioner afforded opportunity for full and fair litigation of claim in state court).

Next, Petitioner raised the substance of this claim in his MAR. Judge Johnston summarily

denied Petitioner's MAR in August 20, 2008, concluding "that identical issues could have been raised on appeal or were resolved against him by the North Carolina Court of Appeals in a decision rendered on October 2, 2007." (See MAR, attached as Ex. 3 to Petition ). Because this claim was not raised on appeal, Judge Johnston's language in his MAR is construed as an invocation of North Carolina's mandatory post-conviction procedural bar statute, barring this Fourth Amendment claim because it was not raised on direct appeal. See N.C.G.S. § 15A-1419(a)(3) and (b) (claim shall be denied when defendant was in an adequate position to have raised it in prior appeal but did not do so, absent cause and prejudice or fundamental miscarriage of justice). See also Rose v. Lee, 252 F.3d 676 (4th Cir 2001) (North Carolina's post-conviction procedural bar statute of section 15A-1419 is now mandatory). Furthermore, subsections 15A-1419(a) and (b), are generally adequate and independent state grounds precluding federal habeas review. See generally, Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998); Boyd v. French, 147 F.3d 319, 332 (4th Cir. 1998); McCarver v. Lee, 221 F.3d 583 (4th Cir. 2000). Therefore, Petitioner's Fourth Amendment claim is procedurally barred from federal habeas review.

  **B. Sixth Amendment Claims**

  Petitioner contends that his counsel: (1) failed to familiarize himself with discovery; (2) failed to file a timely motion to suppress illegally obtained evidence; (3) failed to object to introduction of evidence; (4) failed to go over a defense with defendant; and (5) said he had only a weekend to prepare for trial. Petitioner also challenges virtually all aspects of counsel's representation.

  To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent that it fell below an objective

standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen. Of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992.). The petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. If the petitioner fails to meet this burden, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing, Strickland, 466 U.S. at 697.

Furthermore, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under ... Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364 U.S. 364, 369 (1993). A presumption exists that counsel is competent. A defendant seeking post-conviction relief bears a heavy burden to overcome this presumption. And the presumption is not overcome by conclusory allegations. Carpenter v. United States, 720 F.2d 546 (8th Cir. 1983).

Petitioner's assertions that counsel failed to familiarize himself with discovery; failed to go over a defense with him and that he only had a weekend to prepare for trial, are unsupported allegations that are denied as conclusory. Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("In order to obtain an evidentiary hearing on ineffective assistance of counsel claim – or for that matter, on any claim – a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing.") 507 U.S. 923 (1993). With respect to these alleged deficiencies, Petitioner has not

5

established a professional dereliction nor prejudice as required by Strickland.

Petitioner's assertion that counsel did not advise him of the state's plea offer is belied by Petitioner's own supporting documents, i.e. page 3 of 25 of his supporting brief. There, in his response to Petitioner's complaint to the State Bar, former defense counsel. Mr. Harold Bender, states on March 21, 2008, in pertinent part:

> Mr. Covington told me he would plead to felonious Restraint if the State would dismiss all other charges. That offer was rejected by the Assistance District Attorney Samantha Pendergrass and a Plea Offer was made to First Degree Kidnapping and Second Degree Sex Offense, which was rejected by Mr. Covington.

Thus, Petitioner's assertions regarding the failure to communicate the state's plea offer is without merit.

Next, Petitioner's assertion that counsel failed to file a timely motion to suppress illegally obtained evidence and failed to object to the introduction of evidence refers to Petitioner's buccal (saliva) swab from which his DNA was taken.

First, the North Carolina Court of Appeals has held that the taking of hair and saliva samples without a showing of probable cause, i.e. without a warrant, does not violate the state or federal constitutions. State v. Pearson, 145 N.C. App. 506, 518 (2001) ("Accordingly, we hold that the taking of hair and saliva samples without a showing of probable cause did not abridge either the North Carolina or United States Constitution. We further hold the trial court did not err in denying defendant's motion based on constitutional grounds to suppress the evidence resulting from hair and saliva samples.") affirmed, 356 N.C. 22 (2002). Therefore, counsel was not required to make an argument contrary to the law.

Furthermore, counsel likely did not challenge the collection of the saliva or the DNA results

because that would have been inconsistent with his theory of the case. Petitioner's counsel did not contest the fact that Petitioner had sexual intercourse with the victim, his former girlfriend, but when the sex occurred and whether it was consensual or non-consensual.[1] Indeed, during his examination of the DNA expert, defense counsel elicited that some studies indicate semen can be recovered from a rape victim for up to seven days, though in practice, his laboratory found it to range from about 36 - 48 hours. (Transcript at 446). The DNA expert also admitted that he could not determine whether the semen was deposited during consensual or non-consensual intercourse. (Transcript at 446-47.) Therefore, because Petitioner was not arguing that he did not have sex with the victim, a challenge to the validity of the DNA or the collection of his saliva would have been inconsistent with was defense. In short, Petitioner has not established that his counsel was ineffective for failing to file a motion to suppress the saliva evidence and failing to object to the DNA evidence nor has he established prejudice for his failure to do so.

    **C.**    **Speedy Trial Claim**

Petitioner contends that his Fifth, Sixth and Fourteenth Amendment rights were violated because his speedy trial motion was denied. While Petitioner's claim regarding his speedy trial rights is likely barred for the reasons articulated in the State's Motion for Summary Judgment, it is also without merit. Indeed, Petitioner raised the substance of his current speedy trial claim on direct appeal. The North Carolina Court of Appeals denied the claim alternatively on its merits. The opinion reads in pertinent part as follows:

---

[1] Furthermore, it was not the DNA that linked Petitioner to the crime, because the victim, his former girlfriend, obviously knew her attacker was the Petitioner and stated so in her statement to the police.

Assuming arguendo that the speedy trial issue was properly raised in the court below, Defendant's right to a speedy trial was not violated. The United States Supreme Court has identified four factors "which courts should assess in determining whether a particular defendant has been deprived of his right" to a speedy trial under the federal constitution. Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 22 L. Ed. 2d 101, 117 (1972). These factors are: "(1) the length of he delay, (2) the reason for the delay, (3) the defendant's assertion of [the] right to a speedy trial, and (4) prejudice resulting from the delay." State v. Willis, 332 N.C. 151, 164, 420 S.E. 2d 158, 163 91992). We follow the same analysis in reviewing speedy trial claims under Article I, Section 18 of the North Carolina Constitution. See State v. Jones, 310 N.C. 716, 314 S.E. 2d 529 (1984) and State v. Avery, 95 N.C. App. 572, 383 S.E. 2d 224 (1989), State v. Webster, 337 N.C. 674, 678, 447 S.E. 2d 349, 351 (1994).

First, "[t]he length of the delay is not per se determinative of whether a speedy trial violation has occurred." Id. (citing State v. Pippin, 72 N.C. App. 387, 392, 324 S.E. 2d 900. 904, disc. review denied, 313 N.C. 609, 330 S.E. 2d 615 (1985)). The length of the delay in this case, "[w]hile not enough in itself to conclude that a constitutional speedy trial violation has occurred, . . . is clearly enough to cause concern and to trigger examination of the other [Barker] factors." Id. At 679, 447 S.E. 2d at 351 (citing State v. McKoy, 294 N.C. 134, 141, 240 S.E. 2d 383, 388 (1978)); see also Grooms, 353 N.C. 50, 540 S.E. 2d 713 (holding that delay of three years and 326 days from the indictment to trial triggered examination of other Barker factors).

Second, "defendant has the burden of showing that the delay was caused by the neglect or willfulness of the prosecution." Grooms, 353 N.C. at 62, 540 S.E. 2d at 721. The record on appeal does not clearly establish the reason for the delay. In his pro se motion, Defendant contends that the delays were due to the assignment of four different assistant district attorneys to his case in a "deliberate attempt to delay the trial [.]" Nothing in the record supports Defendant's assertion. The record contains only two documents filed in the case between the date of Defendant's arraignment and the trial: Defendant's pro se motion and a motion in limine filed the day trial began. From our review of the transcript, we are able to determine only that the matter was continued once in 2006 at the request of defense counsel due to his wife's illness. In sum, defendant has not met his burden of showing that the delay was caused by the neglect or willfulness of the State.

Third, as stated above, defense counsel never filed any motions asserting defendant's right to a speedy trial. While the failure to assert the speedy trial does not foreclose the claim, it "does weigh against [Defendant's] contention that he has been denied his constitutional right to a speedy trial." Id. at 63, 540 S.E.2d at 722 (citing Webster, 337 N.C. at 680, 447 S.E. at 352).

Fourth, in considering whether defendant has been prejudiced by a delay between

8

indictment and trial, our Supreme Court has noted that a speedy trial serves "(I) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused ; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." Webster, 337 N.C. at 681, 447 S.E. 2d at 352 (quoting Barker, 407 U.S. at 532, 33 L. Ed. 2d at 118). Regarding this factor, Defendant argued in his pre se motion that "[t]he unreasonable delays have given [Julie] opportunity to change and tailor her story." We note, however, that Julie's testimony at trial was substantially similar to the statements she gave to the police immediately after the kidnappings.

Upon balancing the Barker factors, we hold that Defendant's constitutional right to a speedy trial was not violated. Defendant's argument is overruled.

State of N.C. v. Covington, NO. COA06-1575 (North Carolina Court of Appeals, October 2, 2007), This state court adjudication of Petitioner's speedy trial claim on the merits is correct and consistent with federal constitutional requirements. The state court decision did not result in a decision contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, i.e. Barker v. Wingo, 407 U.S. 514 (1972). Nor is the state court adjudication based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings. Therefore, the state court's adjudication will not be overturned under the deferential standards of review contained in section 2254(d) and (e). See Bell v. Cone, 543 U.S. 447 (2005) (The federal habeas statute "dictate a highly deferential standard for evaluating state-court rulings, which demands theat state-court decisions be given the benefit of the doubt.") (internal quotations marks and citation omitted), Yarborough v. Alvorada, 541 U.S. 652 (2004) and Early v. Packer, 537 U.S. 3 (2002) (state court need not cite or even be aware of United States Supreme Court cases in order to obtain deferential standards of review).

### IV. Order

**THEREFORE IT IS HEREBY ORDERED** that

9

(1) Respondent's Motion for Summary Judgment (Document No. 5) is **GRANTED**; and

(2) Petitioner's § 2254 Motion (Document No. 1) is **DENIED** and **DISMISSED.**

**SO ORDERED**.

Signed: April 1, 2009

*Graham C. Mullen*

Graham C. Mullen
United States District Judge